**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| Madelyn Yvonne Rosario,<br><br>        Plaintiff,<br><br>  v.<br><br>Commissioner of Social Security,<br><br>        Defendant. | Civil No. 17-1345(RMB)<br><br>**OPINION** |

**BUMB**, United States District Judge:

THIS matter comes before the Court upon an appeal by Plaintiff Madelyn Rosario (the "Plaintiff") of the final determination of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for social security disability benefits, disability insurance benefits, and supplemental security income for the period beginning June 17, 2012. For the reasons set forth below, the Court vacates the decision of the Administrative Law Judge ("ALJ") and remands for proceedings consistent with this Opinion.

**I.   Disability Defined**

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states that:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i)-(v). In Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999) the Third Circuit described the Commissioner's inquiry at each step of this analysis, as follows:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987).
>
> In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that his impairments are "severe," he is ineligible for disability benefits.

In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to his past relevant work. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his former occupation, the evaluation moves to the final step.

At this [fifth] stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether he is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).

**II. Background**

The Court recites only the facts that are necessary to its determination on appeal, which is limited to the ALJ's consideration of the severity of Plaintiff's foot injuries and Plaintiff's ability to walk, and specifically to the report provided by Dr. Ronald Bagner.

A. Dr. Bagner's Report and Opinion

On January 7, 2016, Dr. Ronald Bagner, M.D., completed a report and medical source statement. (Administrative Record "R." 660-70). In his report, Dr. Bagner noted that Plaintiff's medical records were unavailable and that Plaintiff was a "poor historian and" did not recall specific details. (Id. at 660). He noted Plaintiff's subjective complaints and listed Plaintiff's medications, and then performed a physical examination.

He observed that, during the physical examination, Plaintiff "ambulate[d] with marked difficulty, holding onto the walls for support," but that she got on and off the examining table with only moderate difficulty, got dressed and undressed without assistance, was not uncomfortable in a seated position, and did not use a cane or crutches and that the ankles showed a normal range of movement. (Id. at 660-61). Dr. Bagner's impression included, among other things, a fracture of the "right calcaneus by history, status post open reduction and internal fixation, status post removal of hardware." (Id. at 661). Dr. Bagner also found, however, that "the objective findings do not show the patient is in marked difficulty." (Id.).

In his medical source statement, Dr. Bagner noted again that Plaintiff walked with "marked difficulty" and "holds walls for support." (Id. at 663). Dr. Bagner further noted that

4

Plaintiff could lift up to 20 pounds frequently, up to 50 pounds occasionally, could sit for a total of 2 hours without interruption and for up to 4 hours in an 8 hour workday, and could stand or walk for 30 minutes without interruption, and for up to 2 hours total in an 8 hour workday. (Id. at 664-65). Importantly, Dr. Bagner also indicated that Plaintiff was unable to walk a block at a reasonable pace on rough or eneven surfaces. (Id. at 670).

B. Procedural Background

Plaintiff applied for benefits under Title II and Title XVI of the Social Security Act on June 6, 2013 alleging a disability onset date of June 17, 2012. (R. 221-36, 252). Plaintiff's claim was denied initially on June 31, 2013, (Id. at 155-60), and upon reconsideration on December 4, 2013. (Id. at 166-70).

On December 31, 2013, Plaintiff requested a hearing, (Id. at 171-76), and on December 14, 2015, a hearing was held before the Honorable Nicholas Cerulli. (Id. at 33-106). Plaintiff, who was represented by counsel, testified at the hearing, as did vocational expert William Slavin. On August 10, 2016, the ALJ issued a decision finding that Plaintiff was not disabled. (Id. at 14-24). The Appeals Council denied Plaintiff's request for review on January 31, 2017, (Id. at 1-6), at which time the ALJ's decision became the final determination of the Commissioner.

C. <u>The ALJ's Decision</u>

The ALJ applied the requisite five-step analysis, ultimately concluding that Plaintiff was not "disabled." At Step 1, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of June 17, 2012, through her date last insured of June 30, 2016. (<u>Id.</u> 16). At Step 2, The ALJ found that Plaintiff had five severe impairments: degenerative joint disease, status post open reduction internal fixation of the right wrist and foot; arthralgia; traumatic brain injury; bi-polar disorder; and post-traumatic stress disorder ("PTSD").[1] (<u>Id.</u> at 17). Next, at the Third Step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1.[2] (<u>Id.</u>) In reaching this conclusion, the ALJ noted that he considered listings 1.02, 12.02, 12.03, 12.03, 12.06 and 14.06 with regard to Plaintiff's physical impairments. He then explicitly considered Plaintiff's mental limitations before concluding they did not rise to the

---

[1] The ALJ also addressed Plaintiff's hypertension, holding that "a review of the record does not reveal any indication that" Plaintiff's hypertension "individually or in combination" had "more than a minimal effect on [Plaintiff's] ability to do basic physical or mental work activities."(R. 17). Thus, the ALJ found that this did not constitute a severe impairment.
[2] This determination is challenged by the Plaintiff, as discussed fully below.

6

level of severity required to meet "paragraph B" or "paragraph C." (Id. at 17-18).

Based on his findings, the ALJ determined that Plaintiff had the RFC to perform

> sedentary work as defined in 20 CFR 404 .1567(a) and 416.967(a) except occasional pushing and pulling with the right lower extremity, occasional climbing, balancing, stooping, kneeling, crouching, and crawling; and frequent handling, fingering, and feeling. Further, she must avoid exposure to extreme heat and cold, wetness, humidity, and hazards such as unprotected heights and moving machinery. In addition, she is limited to unskilled work involving simple one to two-step tasks in a low stress environment described as only occasional changes in the work setting and occasional decision making with no quota or production based work—but rather goal oriented. Lastly, she is limited to only occasional interaction with co-workers and supervisors with no interaction with the members of the public.

(Id. at 19).

In making these findings, the ALJ looked to, among other things, the Plaintiff's testimony, the Plaintiff's medical record, a consultative examiner psychiatric opinion provided by Dr. J. Theodore Brown, Ph. D., and the results of the internal medicine consultative evaluation performed by Dr. Bagner. (Id. at 19-22). The ALJ found that Plaintiff's allegations regarding the severity and intensity of both her physical and mental limitations were not supported by the objective medical evidence. (Id. at 20). The ALJ also afforded little weight to opinions of Dr. Brown and Dr. Bagner. With regard to Dr. Brown's

7

opinion that Plaintiff had "marked limitation in her ability [to] adequately interact with supervisors, understand and remember simple directions, make judgments on simple work-related decisions and respond appropriately to usual work situations and changes in a routine work setting," the ALJ held that it was inconsistent with the objective findings, including the results of Dr. Brown's mental status examination which "revealed unremarkable thought process, unremarkable affect, unremarkable mood, [and] unremarkable orientation. (Id. at 21). In assigning little weight to Dr. Bagner's opinion, the ALJ relied on the fact that "Dr. Bagner's [sic] specifically states that the objective examination does not support the claimant's level of subjective severity." (Id. at 22).

After performing the RFC assessment, the ALJ determined that Plaintiff was unable to perform any past relevant work. (Id. ). Furthermore, the ALJ concluded that Plaintiff was a "younger individual" as of the alleged disability onset date, had at least a high school education and was able to communicate in English. (Id. at 23). He further determined that transferability of job skills was immaterial to his determination under the medical-vocational rules. (Id. at 22-23). Then, considering Plaintiff's age (37 years old as of the alleged disability onset date), education, work experience, and RFC as determined, the ALJ found that there were jobs that

8

existed in significant numbers in the national economy that Plaintiff could have performed. (Id. at 23).

**III. Standard of Review**

When reviewing an ALJ's final decision on disability benefits, courts are required to uphold the ALJ's factual determinations if they are supported by "substantial evidence." Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3). "'Substantial evidence' has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Dellapolla v. Comm'r, 662 Fed. Appx. 158, 160 (3d Cir. 2016) (quoting Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971))).

If faced with conflicting evidence, however, the Commissioner "must adequately explain in the record his reason for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)); see also Guerrero v. Comm'r, No. 05-1709, 2006 WL 1722356, at *3 (D.N.J. June 19, 2006) ("The ALJ's responsibility is to analyze all the evidence and to provide adequate explanations when disregarding portions of it."), aff'd, 249 F. Appx. 289 (3d Cir. 2007). As stated by the Third Circuit,

> [U]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of Health, Ed. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977)) (internal quotations omitted).

While the Commissioner's decision need not discuss "every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004), it must consider all pertinent medical and non-medical evidence and "explain [any] conciliations and rejections," Burnett v. Comm'r, 220 F.3d 112, 122 (3d Cir. 2000). See also Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the [administrative law judge] to make reference to every relevant treatment note in a case where the claimant ... has voluminous medical records, we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law.").

In addition to the "substantial evidence" inquiry, the Court must also determine whether the ALJ applied the correct legal standards. See Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir.

2000). The Court's review of legal issues is plenary. Id. at 262 (citing Schaudeck v. Comm'r, 181 F.3d 429, 431 (3d Cir. 1999).

**IV. Analysis**

Plaintiff presents three issues for review by this Court. First, Plaintiff argues that the ALJ's determination that Plaintiff did not have an impairment that met the medical listings, and particularly "Listings of Impairments § 1.02 and/or § 1.03[,] was not supported by substantial evidence or an adequate rationale." (Pl.'s Br. 13). Second, Plaintiff argues that the ALJ's finding as to Plaintiff's RFC was not supported by substantial evidence. Finally, Plaintiff argues that the ALJ's determination at Step Five that there were a significant number of jobs in the national economy for Plaintiff was not based on substantial evidence because the testimony provided by the vocational expert (on which this determination was based) was not credible.

Because the Court finds that the ALJ failed to fully address the reasons why Plaintiff did not meet one of the listed impairments in 20 CFR Part 404, Subpart P, App. 1 and specifically failed to address Dr. Bagner's indication that Plaintiff "could not walk a block at a reasonable pace on rough or uneven surfaces," the Court cannot determine whether the Commissioner's finding is supported by substantial evidence.

Because remand is warranted on this issue, the Court need not reach Plaintiff's additional arguments.

> A. The ALJ Failed to Address Plaintiff's Inability to Fully Ambulate

As noted above, on the medical source statement completed on January 7, 2016, Dr. Bagner indicated that Plaintiff could not "walk a block at a reasonable pace on rough or uneven surfaces," and that Plaintiff "ambulate[d] with marked difficulty, holding onto the walls for support." (R. 660). Dr. Bagner further indicated that Plaintiff's inability to walk a block had lasted or would last for 12 consecutive months. (Id. at 670). The ALJ addressed Dr. Bagner's opinion, and specifically addressed his indication that Plaintiff ambulated using the wall for support. The ALJ afforded Dr. Bagner's opinion little weight, relying on the fact that Dr. Bagner found that the objective medical evidence did not support the level of severity (needing a wall for support to walk a short distance) that Plaintiff claimed. The ALJ did not, however, address Plaintiff's inability to walk a block at a reasonable pace.

It is the "the ALJ—not treating or examining physicians or State agency consultants" who "make[s] the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)). In making that decision, the ALJ

12

is entitled to critically evaluate the evidence, including the opinions of physicians, but must "sufficiently explain" the weight given to "obviously probative exhibits." Terwilliger v. Chater, 945 F. Supp. 836, 842 (E.D. Pa. 1996) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)). An ALJ may not, however, "reject a physician's findings unless [s]he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected." Terwilliger, 945 F. Supp. at 842 (quoting Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993) (internal quotation marks, citations and indication of alteration omitted). "We are unable to conduct our substantial evidence review if the ALJ fails to identify the evidence he or she rejects and the reason for its rejection." Smith v. Barnhart, 54 F. App'x 83, 86 (3d Cir. 2002) (citing Walton v. Halter, 243 F.3d 703, 710 (3d Cir. 2001)).

20 C.F.R. 404, subpart P, 1.00B2b provides that "examples of ineffective ambulation include, but are not limited to . . . the inability to walk a block at a reasonable pace on rough or uneven surfaces." The ability to ambulate is relevant to at least 20 C.F.R. 404, subpart P, App. 1, 1.02 and 1.03. The ALJ provided that he "considered the listings generally" under 1.02 and 14.06 and that "no treating, examining, or non-examining medical source has mentioned findings or rendered an opinion

that the claimant's impairments, singly or in combination, medically equaled the criteria of any listed impairment." (R. 17). The ALJ did not, however, provide any reasoning or discuss whether Plaintiff was unable to effectively ambulate and if so what effect this had on Plaintiff's ability to meet one of the listed impairments. Accordingly, the Court cannot determine whether the ALJ considered Dr. Bagner's finding.

Moreover, with respect to Plaintiff's RFC, the ALJ found, among other things, that Plaintiff could sustain "occasional pushing and pulling with the right lower extremity, occasional climbing, balancing, stooping, kneeling, crouching, and crawling." (Id. at 19). As noted above, in making this finding the ALJ afforded little weight to the opinion of Dr. Bagner. The ALJ's sole reason for disregarding Dr. Bagner's opinion was Dr. Bagners statement that the objective evidence did not indicate that Plaintiff was unable to walk without using a wall for support. Neither Dr. Bagner nor the ALJ indicated that Plaintiff's inability to walk a block at a reasonable pace was inconsistent with the objective evidence. Accordingly, the Court cannot determine whether the ALJ considered this impairment in reaching the RFC.

As such, the Court will remand. On remand, the ALJ may still determine that Plaintiff does not meet a listed impairment. Moreover, the ALJ may discredit Dr. Bagner's opinion

and medical source statement. If so, however, he must make clear that he has considered all of Plaintiff's medically determined impairments. An Order consistent with this Opinion shall issue on this date.

                                                      _s/_Renee Marie Bumb
                                                      RENÉE MARIE BUMB
                                                      United States District Judge

DATED: March 29, 2018